FILED

MAR 17 2009

RICHARD W. WIEKING
CLERK, U.S DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICKEY STEWART,

    Petitioner,

v.

A. P. KANE, warden,

    Respondent.

No. C 05-4574 MHP (pr)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Mickey Stewart, a prisoner at the Correctional Training Facility in Soledad, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

The California Court of Appeal described the evidence of the crimes that led to the rape conviction. See Resp. Exh. F, Cal. Ct. App. Opinion, pp. 1-5. This court will not repeat that lengthy description, and instead only briefly summarizes this case where the defense was that of consent. The victim, identified as Julia Doe, testified that she knew Stewart as a childhood friend, and gave him a ride home after seeing him at a nightclub. She dropped off her friend, Shanae Knight, and then was in the car alone with Stewart. According to Doe, after they stopped at his house to see if anyone was home, Stewart came back to the car, got in the passenger seat and took her car keys. They argued for 30-40 minutes, and Doe pled with him to return the car keys back so she could go home to give medicine to her daughter.

Stewart got into the driver's seat, drove away and told her she would "have to do something." Id. at 2. He eventually stopped the car, and sexually assaulted her against her will, although she did not physically fight him. She fled the car and contacted two men on the street, indicating to them that she had been raped. They told her to call the police, and she did from a nearby telephone booth. The police arrived within a minute and arrested Stewart. The police took her to a hospital, where she was examined. The physician's assistant who examined her testified as an expert witness that the findings of the examination were consistent with nonconsensual sex. The two men toward whom Doe had fled on the street testified that she was crying and indicated she had been raped. The police offers who arrived on the scene described Doe as very upset. Stewart told the officers that he and the victim had sex, but that it was consensual. Her car keys were found in Stewart's pocket.

Stewart was convicted in a jury trial in the Alameda Count Superior Court of forcible rape. See Cal. Penal Code § 261(a)(2). On October 7, 2003, the court sentenced Stewart to six years in prison.

Stewart appealed. The California Court of Appeal affirmed the conviction in a reasoned decision. The California Supreme Court denied the petition for review.

Stewart then filed this action, seeking a writ of habeas corpus. The court issued an order to show cause why the writ should not be granted on Stewart's claim that the exclusion of certain defense evidence and the restriction of cross-examination of Doe violated his Sixth and Fourteenth Amendment rights to cross-examine witnesses and to present a defense. Respondent filed an answer and Stewart filed a traverse. Later, at the court's request, the record was supplemented with a portion of the clerk's transcript that had not been submitted when the parties filed their briefs. The matter is now ready for a decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Alameda County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claims asserted in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

## DISCUSSION

A.  Background Regarding Evidence Excluded

Stewart contends that his constitutional rights were violated when the trial court refused to let him present evidence and cross-examine Doe about (a) a prior incident of domestic violence where she was the alleged perpetrator and (b) her allegedly false reports that her former husband was violent toward her in other incidents.

   1.  Julia Doe's Arrest For Domestic Violence

The defense wanted to introduce evidence about Julia Doe's August 25, 2001 arrest for domestic violence. The police report (CT 130-135) for the incident included the versions provided by Raymond Ford (who had been married to Doe for two years at that point in time), their friend Alyssa, and Doe. Ford stated that he and Doe had been drinking that night,

3

began arguing, the argument escalated, then Doe hit him in the face with a closed fist, and then he grabbed her hands to prevent being hit further. Their friend (Alyssa) who was present, gave the same version of the incident to the police officer. Doe told the officer a similar story, except that in her version Ford pushed her first and she immediately retaliated by hitting him. The officer wrote that Ford had a large amount of swelling under his left eye, a quarter-inch cut under his left eye, and a half-inch bruise on his left biceps. The officer arrested Doe on suspicion of domestic violence, took her to the jail, and referred the case to the District Attorney. Doe was never prosecuted or convicted, however. Ford refused medical attention, refused to sign a statement, refused to have his injuries photographed, and refused to pursue criminal charges. CT 132. The friend also refused to sign a statement.

Stewart's attorney moved in limine to cross-examine Doe about the incident because it was a misdemeanor involving moral turpitude and would bear on her credibility. See CT 141. He also argued that her conduct with her ex-husband was relevant to whether she would have been able to defend against unwanted sexual advances by Stewart. The trial court excluded the evidence as it pertained to Doe's credibility, ruling that there was insufficient evidence of an act of moral turpitude because Ford refused to give a statement to police. The trial court rejected the argument that the evidence was relevant to show Doe's ability to fend off men, unless Doe opened the door to its admission by testifying that she had never hit a man. The trial court later denied the defense request to question Ford about the incident.

    2.    Julia Doe's Alleged False Accusations About Her Ex-Husband

The defense also wanted to ask Ford about Doe's previous allegedly false accusations that he (Ford) committed domestic violence against her. The parties referred to a police report (not in the record) in which Doe had told police her husband engaged in domestic violence against her. "In that report, although the ex-husband admitted tearing the victim's clothes off, he said that she was falsely accusing him and that she had filed false police reports in the past." Cal. Ct. App. Opinion, p. 5.

4

At Stewart's rape trial, the trial court refused to allow questions about this because the ex-husband had entered a plea of guilty or no contest to the charge and was on probation for it. Also, the trial court was persuaded by the fact that the defense had no further information about the other alleged false accusations that had been mentioned by Ford in that police report.

### 3. State Appellate Court's Decision

The California Court of Appeal rejected the claim that the trial court had violated Stewart's constitutional right by excluding the evidence. The appellate court cited Delaware v. Van Arsdall, 475 U.S. 673 (1986), set out the legal standard for evaluating a Confrontation Clause claim based on a restriction on cross-examination, and then applied it to Stewart's case.

> Although past criminal conduct that involves moral turpitude is admissible in California even though it does not result in a felony conviction, the court still has the discretion to limit such evidence under Evidence Code section 352, if its prejudicial effect outweighs its probative value, or due to undue consumption of time or confusion of issues. [Citation.] That is precisely what occurred here. As the court below stated, "At some level there may be some relevance to it, but the relevance spins off when you put it in context, and then we get into a whole marriage . . . That's not what we are supposed to be doing in this case. This has nothing to do with marriage assault claims; nothing before me has anything to do with the slightest – with that." We agree. Given the weakness of the proffered evidence, its very limited probative effect, its great potential for prejudicial effect, and the undue consumption of time and confusion of issues that would result, the court was well within its discretion in excluding evidence of the prior alleged act of domestic violence by the victim.
>
> As to the prior alleged false reports of domestic violence by the victim, the same analysis attaches. The evidence would have had only slight probative value in the case at hand, and the potential for prejudicial effect and undue consumption of time, to say nothing of confusion of issues, was great. No support of the allegations of false reports was forthcoming by the defense, other than the ex-husband's claim in a police report alleging he committed domestic violence, a charge to which he later entered a plea. Defendant has failed to demonstrate that either area of cross-examination would have produced "a significantly different impression of [the victim's] credibility. . . ." [Citation.] We find no error in the trial court's preclusion of either area of cross-examination.

Cal. Ct. App. Opinion, pp. 7-8.

5

B.    Analysis Of Constitutional Claims

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. The right applies to the states through the Fourteenth Amendment. See Pointer v. Texas, 380 U.S. 400, 403 (1965). The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but "it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." Crawford v. Washington, 541 U.S. 36, 61 (2004); see Davis v. Alaska, 415 U.S. 308, 315-16 (1974) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.") "[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Id. at 316-17. The Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

Similarly, the Due Process Clause does not guarantee the right to introduce all relevant evidence. Montana v. Egelhoff, 518 U.S. 37, 42 (1996). A defendant does not have an unfettered right to offer evidence that is incompetent, privileged or otherwise inadmissible under standard rules of evidence. Id. The exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Id. at 43 (internal quotations omitted).

In this case, the analysis begins by noting that California Evidence Code § 352 is a rather commonplace kind of evidentiary rule allowing the exclusion of evidence where its

6

probative value is substantially outweighed by some other factor. Under § 352, evidence can be excluded when its probative value is outweighed by the probability that its admission will necessitate undue consumption of time, be unduly prejudicial, confuse the issues or mislead the jury. Section 352 itself does not offend due process or the Confrontation Clause, and is just the kind of rule that Van Arsdall, 475 U.S. at 679, referred to as being within the "wide latitude" of reasonable limits on cross-examination. And the application of § 352 to exclude the evidence did not result in a violation of Stewart's rights to confront witnesses and due process.

Here, the trial court's determination that the domestic violence evidence would not be admitted was well within that wide latitude a court has to impose reasonable limits on cross-examination. It cannot be denied that the evidence sought to be introduced (assuming its truth) was relevant to Doe's credibility in this case where competing stories about consent made credibility of victim and perpetrator a central issue. If Doe had engaged in an act of domestic violence that was an act of moral turpitude, evidence of that act would be relevant and admissible under California law. See People v. Wheeler, 4 Cal.4th 284, 292 (Cal. 1992) (constitutional amendment made by Proposition 8 allows admission of all relevant evidence, including evidence of conduct amounting to a misdemeanor, although the limitations of § 352 remain); id. at 295 ("We therefore conclude that if past criminal conduct amounting to a misdemeanor has some logical bearing upon the veracity of a witness in a criminal proceeding, that conduct is admissible, subject to trial court discretion, as 'relevant' evidence"); id. at 297 n.7 (impeaching misdemeanor conduct must in some instances be proven by direct evidence of the acts committed, rather than the fact of conviction). Doe was the complaining witness and her truthfulness was relevant to the believability of her testimony. The evidence would have shown that Doe once engaged in an act of moral turpitude, and that may have suggested a willingness to lie and made her less credible. See Wheeler, 4 Cal. 4th at 295 ("Misconduct involving moral turpitude may suggest a willingness to lie"); cf. Davis, 415 U.S. at 316 ("One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner

7

intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony.") Though relevant, it must be remembered that the evidence was generic credibility evidence, and did not show a specific bias for Doe. The evidence sought to be admitted would not necessarily have been the end of Doe's believability because the domestic violence incidents did not have a logical parallel with the rape incident. Cf. Fowler v. Sacramento County Sheriff's Dept, 421 F.3d 1027, 1038-41 (9th Cir. 2005) (defendant's Confrontation Clause rights violated when the state court excluded under § 352 evidence that the complaining witness twice previously had accused her mother's boyfriends of molestations similar to the accusations she made against this defendant).

The probative value of the evidence was greatly outweighed by its potential for confusion and consumption of time, and this tipped the scales toward its exclusion  The trial court was properly concerned with the likelihood of "trials within a trial" to determine what had happened in the domestic violence incidents during the Doe/Ford marriage. Stewart presumes that Doe's domestic violence act and false accusations could have been shown in a quick and direct evidentiary presentation, but the evidentiary presentation would have been far murkier and dragged-out than he suggests. Efforts to make these two points likely would have resulted in a trial of the Doe/Ford marriage within Stewart's rape trial that would have taken much time and would have been very confusing to the jury. Unless Doe simply admitted that she had engaged in domestic violence and had falsely accused her husband in the past, proving up the domestic violence history of the marriage might entail testimony about it from Doe, Ford, and perhaps friends, family members, and responding police officers. The trial court reasonably decided to exclude the evidence under § 352. Presenting evidence of the August 25, 2001 domestic violence incident (in which she was the accused perpetrator), the evidence of the second incident (in which the husband was the convicted perpetrator), plus evidence of an unstated number of other incidents between Ford and Doe would result in an undue consumption of time, and confusion of the jury. As the trial court noted, the evidence was of "very limited impeachment value" and had a great potential to

require delving into the domestic violence situation over a decade between Doe and Ford. See RT 637. Trying to sort out who did what to whom in the Doe/Ford marriage was quite collateral to the issue of whether Stewart raped Doe. There would have been one "he said, she said" trial within another "he said, she said" trial which would consume considerable trial time and likely would confuse the jurors, whose real task was to determine Stewart's guilt and not the violence level in the accuser's former marriage. The exclusion of the domestic violence evidence did not deprive Stewart of an opportunity for effective cross-examination of Doe. Also, there was some evidence that showed in a *limited* way that she was less than 100% truthful: she was stopped that night by police for a traffic offense and was found to have fake license tags on her car, and she had understated the number of drinks she had that night. There was not a Confrontation Clause violation.

The exclusion of the evidence also did not violate Stewart's right to due process or to present a defense. In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004), cert. denied, 544 U.S. 919 (2005); Drayden v. White, 232 F.3d 704, 711 (9th Cir. 2000), cert. denied, 532 U.S. 984 (2001). The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based. See Chia, 360 F.3d at 1006. As to the first factor, the evidence was of only modest probative value on the central issue of credibility. The evidence would provide some impeachment of her credibility if it could be established that she did engage in an act of domestic violence. The evidence that she had made false accusations against her husband also would provide some impeachment of her credibility if it could be established that she had falsely accused him. Insofar as Doe's act of domestic violence would show, as Stewart argues, that if she didn't consent she would have physically fought back, the evidence had no probative value on any legitimate defense because the

9

failure to fight back does not equal or signal consent. As to the second factor, both bits of evidence were of dubious reliability. Her arrest had not resulted in a conviction, neither her husband nor the friend who witnessed it had been willing to give a written statement to the police, and she denied that she had been the initial aggressor – the evidence therefore would have been of low reliability in proving that she was not a credible witness. The evidence also would have been of very low reliability to prove Stewart's other reason for seeking its admission, i.e., his contention that the evidence that Doe hit her husband would show that she was spunky enough that, if she genuinely did not want to have sex with Stewart, she would have physically fought back against him. As the trial court noted, the two incidents were not comparable: hitting her husband with whom she had an existing relationship in which domestic violence occurred had a more predictable outcome than hitting a stranger while alone with him in an unfamiliar part of town in the middle of the night. Stewart also apparently was larger than Ford, and considerably larger than Doe: Doe was outsized by Stewart by at least a foot in height and a hundred pounds in weight. Ford's accusation that she had falsely accused him also was of low reliability, as the statement was made by Ford as he talked to the police about an incident for which he ultimately was convicted of committing the act of domestic violence. As to the third factor, the evidence would not be capable of evaluation by the trier of fact unless there was a trial within a trial so that the jury could get the full flavor of the domestic violence picture of Doe's former marriage. Even with full exploration of the Doe/Ford marriage, the evidence would have been confusing for a jury that thought its job was to determine whether Stewart raped Doe. As to the fourth factor, the evidence was not cumulative. As to the fifth factor, the evidence would, if proven, likely made Doe a less believable witness to the jury, but did not necessarily establish that Stewart did not rape Doe. Consideration of these factors leads the court to conclude that Stewart's right to due process and to present a defense was not violated.

The exclusion of the domestic violence evidence did not distort the truth or preclude the "opportunity for effective cross-examination." Delaware v. Fensterer, 474 U.S. at 20. Nor did the exclusion of the domestic violence evidence prevent Stewart from presenting his

defense. In light of the state's significant interest in excluding evidence where its probative value is substantially outweighed by jury confusion and undue consumption of time, the state court's rejection of Stewart's claim was not contrary to or an unreasonable application of clearly established federal law as set forth by the Supreme Court.

## CONCLUSION

The petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: March 17, 2009

Marilyn Hall Patel
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


STEWART,

         Plaintiff,

v.

KANE et al,

         Defendant.
                           /

Case Number: CV05-04574 MHP

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 18, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Mickey Stewart V-09969
Correctional Training Facility
P.O. Box 705
Soledad, CA 93960-0705

Dated: March 18, 2009

                                        Richard W. Wieking, Clerk
                                        By: Anthony Bowser, Deputy Clerk